**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**REV. TOM BROWN**                                                                 **PLAINTIFF**

**V.**                          **CASE NO. 5:18-CV-05199**

**MAYOR LIONELD JORDAN; CITY**
**ATTORNEY KIT WILLIAMS; JANE DOE,**
**Assistant City Attorney; CITY POLICE**
**OFFICER CRAIG STOUT;**
**CITY POLICE OFFICER B. KUCHENBECKER;**
**CITY POLICE OFFICER R. SCHLEIFF;**
**CHUCK RUTHERFORD, City Building**
**Department Employee; JUDGE WILLIAM**
**STOREY; SHERIFF TIM HELDER; JAIL**
**STAFF JOHN AND JANE DOES; MICHAEL**
**SCOTT LYONS, Flash Market #193 Manager; and**
**FLASH MARKET OWNERS, names unknown**          **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, Reverend Tom Brown, filed this civil rights action pursuant to 42 U.S.C.

§ 1983 alleging that his First, Fourth, and Fourteenth Amendment rights have been

violated. Plaintiff also alleges violations of the Religious Freedom Restoration Act

("RFRA"), 42 U.S.C. § 2000bb *et seq*.; the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; and violations of the Arkansas

Religious Freedom Restoration Act ("ARFRA"), Ark. Code. Ann. § 16-123-402 *et seq.* He

names as Defendants City of Fayetteville Mayor Lioneld Jordan; Fayetteville City Attorney

Kit Williams; Jane Doe Assistant City Attorney; Fayetteville Police Officers Craig Stout,

B. Kuchenbecker, and R. Schleiff; City of Fayetteville employee Chuck Rutherford; Judge

William Storey; Sheriff Tim Helder; John and Jane Doe staff at the Washington County

Detention Center; Michael Scott Lyons, the Manager of Flash Market #193; and the Flash Market owners. He is suing all Defendants in both their individual and official capacities.

Plaintiff has filed an application to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915. Pursuant to 28 U.S.C. § 1915(e)(2), the Court has the obligation to screen any complaint in which an individual has sought leave to proceed IFP.

## I. BACKGROUND

According to the allegations of the Complaint (Doc. 1) and the unsigned Amended Complaint (Doc. 11), Plaintiff is a minister of the Rastafarian Faith and founder of the First Church of the Magi, Inc. Plaintiff maintains that "[m]arijuana is the sacrament of the Rastafarian faith." *Id.*

On October 17, 2016, Plaintiff was advocating for the passage of two medical marijuana ballot issues by holding a large sign, pictured below, at the corner of Futrall Avenue and Martin Luther King Boulevard in Fayetteville, Arkansas.



The election was scheduled for November 8, 2016. Prior to the election, the Arkansas Medical Cannabis Act, also known as Issue 7, referenced in the sign, was struck from the ballot by a decision of the Arkansas Supreme Court issued on October 27, 2016. *Benca v. Martin*, 2016 Ark. 359. Issue 6, also referenced in the above sign, was known

2

as the Arkansas Medical Marijuana Amendment and appeared on the November 8, 2016 ballot as an initiated constitutional amendment.  Issue 6 passed.

Plaintiff alleges that on October 17, 2016, he positioned himself between the curb and sidewalk just north of Flash Market #193.  Plaintiff indicates he was soon approached by Michael Scott Lyons, who identified himself as the manager of the Flash Market.  According to Plaintiff, Lyons demanded to know why Plaintiff was standing beside the road.  Plaintiff explained that he was advocating for the passage of the Medical Marijuana Act.  Lyons then demanded that Plaintiff leave the location, or he would call the police.

Shortly thereafter, Plaintiff was approached by two police officers, Officer Kuchenbecker and Officer Schleiff.  Plaintiff asserts that Lyons lied to the police dispatcher saying that Plaintiff was begging on Flash Market property.  Plaintiff alleges Lyons also lied to the officers by claiming Plaintiff moved to the sidewalk just prior to their arrival.  Plaintiff further alleges that "[b]ut for the lies of the Flash Market Manager and the conspiracy to promote the illegal and unconstitutional anti-begging law, the police would have never arrived."  (Doc. 1, p. 13).  Plaintiff maintains the officers should have referred to video cameras on the traffic signal lights to determine whether he had, in fact, been standing on Flash Market property.

According to Plaintiff, the officers demanded that he cease his activities, or he would be arrested.  Plaintiff told them he had no identification on him[1] and refused to provide the officers with his date of birth so that they could verify his identity.  (Doc. 1-1 at 4).  Plaintiff was arrested at approximately 9:54 a.m., charged with obstruction of governmental operations, and transported to the Washington County Detention Center

---

[1] However, when Plaintiff was booked in, he had his Arkansas State Driver's License and various other forms of identification with him.  (Doc. 1, p. 7).

("WCDC").  Plaintiff refused to respond to questions about whether he wanted to keep his sign, and it was thrown away at the Flash Market.  *Id.*

At the WCDC, the intake officer demanded that the Plaintiff verbally answer his questions including providing his birth date, social security number, and phone number. Plaintiff, relying on his *Miranda*[2] rights, remained silent.  Plaintiff maintains that he was then threatened with spending 72 hours in an intake cell without access to a phone call or medicine.   Plaintiff continued to refuse to "verbally answer" the intake officer's questions.  (Doc. 1, p. 7).  Plaintiff was placed in an intake cell and remained there until late in the afternoon of October 18, 2016, when he was moved to general population.

According to Plaintiff, the intake cell was maintained at about 50 degrees.  Plaintiff states he was sixty-nine years old, weighed one hundred and forty-five pounds, was suffering from "[p]rostate cancer symptoms," and had been prescribed medication, supplied by the Veteran's Administration, for the problem.  *Id.*  He alleges his flannel shirt was taken and he was left with only a t-shirt and his pants for clothing.  Plaintiff asserts that he suffered from the cold, was unable to sleep, and became almost comatose. During this time, Plaintiff did not have his medication and was unable to use a phone.

While in population, Plaintiff maintains he was unable to use the electronic kiosk because his glasses were taken, and therefore he could not read the numbers on his identification bracelet that he needed to use to access the kiosk and lodge a grievance.

Plaintiff was arraigned before Judge William Storey the afternoon of October 19, 2016.  (Doc. 1-1, p. 16).[3]  Plaintiff indicates he immediately asked for Judge Storey to

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[3] These allegations are made in an unsigned and undated affidavit attached to the Complaint.  (Doc. 1-1, p. 14-17).

recuse himself because Plaintiff had "previously filed criminal charges against Storey for taking a bribe in a case of one of [Plaintiff's] church members." *Id.* According to Plaintiff, when he asked Judge Storey to recuse himself, the judge laughed, said they had a colorful history, entered a not guilty plea on Plaintiff's behalf, and set bail at $500. Plaintiff alleges that when he then demanded that he be released on his own recognizance, Judge Storey "laughed again and said that he recused himself so that he could not make that decision." *Id.*

Plaintiff's Amended Complaint (Doc. 11) for the most part adds information to support his claims against Judge Storey. Plaintiff states that beginning in 2003, he helped one of his church members, Jeff Thomas, seek to have criminal charges and an ethical complaint filed against Judge Storey. Thomas had been arrested at the time, and Plaintiff believes that Judge Storey wrongly revoked Thomas' bail; solicited a bribe from Thomas; ordered the court clerk to falsify the docket sheet to conceal the fact that Thomas had pleaded not guilty "by reason of religious exercise"; denied Thomas a valid defense without hearing testimony or other evidence; and engaged in a conspiracy to use the civil forfeiture laws to unlawfully seize Thomas's property. Plaintiff maintains that due to his own involvement in assisting Thomas with his criminal case, Judge Storey held a grudge against Plaintiff.

Plaintiff admits in the Amended Complaint that since 2003, he has confronted Judge Storey repeatedly in public and accused him of taking bribes and falsifying court records. In Plaintiff's view, Judge Storey's judicial acts on October 19, 2016—entering a not guilty plea for Plaintiff and setting his bail at $500—were done in retaliation for the problems Plaintiff has caused Judge Storey beginning in 2003.

After Plaintiff was arraigned on October 19, he was returned to the WCDC. In the evening, he found he was unable to urinate due to his "untreated prostate problems." (Doc. 1, p. 9). He was provided with a catheter, and when he removed it, he claims there was fresh blood on the tip. As this had never happened before, Plaintiff asked for medical assistance. The following day, October 20, 2016, Plaintiff attempted to catheterize himself again, but he was unable to do so because his ureter was blocked. Again when he removed the catheter, it had fresh blood on it. Plaintiff renewed his request for medical assistance.

He was released on October 20, 2016, at approximately 2:00 p.m. During the entire time he was incarcerated in the WCDC, Plaintiff claims he was only allowed to make one phone call to the City Attorney's office that was answered by an assistant. Plaintiff advised the assistant to ask Williams if he "really wanted the Plaintiff arrested and jailed." *Id.* Plaintiff did not hear back from Williams' office while he was in jail.

With respect to his request for medical assistance, he alleges that he was not provided his medication or any medical care prior to release. Plaintiff asserts he was going to be released to the street despite not having any transportation. Plaintiff further asserts he was passing blood, and the stains were visible on his jail clothing. Plaintiff insisted that an ambulance be called to transport him to the hospital. Eventually, an ambulance was called and transported Plaintiff to Washington Regional Medical Center where a Foley catheter was inserted. Plaintiff maintains that he went to the local VA hospital the next day where he was told he had an infection and was prescribed antibiotics, as well as opiate pain medication due to complications from the Foley

catheter.  Plaintiff alleges the Foley catheter was not removed until approximately two weeks later, limiting Plaintiff's activities in the meantime.

On October 21, 2016, Plaintiff received a phone call from City Attorney Williams during which Williams allegedly apologized for the arrest, said that no charges would be filed, and suggested that they proceed to an informal resolution of Plaintiff's claims of "illegal arrest, tortious confinement, deliberate medical indifference and other issues." (Doc. 1, p. 10).  Plaintiff indicates he received the same message from the Washington County Attorney.

According to Plaintiff, on two separate occasions two officers of the Fayetteville Police Department came to his house without a warrant or probable cause and asked what compensation he wanted for the sign that was thrown away.  Plaintiff claims he told them that the extended denial of his right to advocate for the passage of the Medical Marijuana Act and for his religion (which advocates using marijuana in religious services), as well as his illegal arrest and his tortious confinement also needed to be addressed by the proper officials.  The officers allegedly refused to consider Plaintiff's claims.

Subsequently, Plaintiff filed a complaint with the Fayetteville Police Department and sent documents entitled "Notice of Tort" to Mayor Jordan, Sheriff Helder, and Washington County Judge Joseph Wood.  On March 2, 2017, Plaintiff attended a meeting with the Fayetteville City Attorney's Office to pursue an informal resolution of his claims.  Plaintiff alleges he was advised that "nothing would be done or admitted by the City."  (Doc. 1, p. 11).  Plaintiff states that the County Attorney failed to attend the meeting.

With respect to city employee Chuck Rutherford, Plaintiff alleges that on July 10, 2018, Rutherford entered Plaintiff's property and left "an application for attendance at

Farmers Market." (Doc. 1, p. 14). Plaintiff maintains that Rutherford's actions constituted an illegal entry on Plaintiff's property and threatened Plaintiff for exercising his First Amendment right to speak at the Fayetteville Farmers Market. To Plaintiff, Rutherford's entry on his property demonstrated "the ongoing nature of the City Employee's cum Business leaders RICO conspiracy in violation of Religious Establishment and Exercise." *Id.*

Plaintiff also maintains his arrest on October 16, 2016, was done in violation of an order the undersigned entered on April 8, 2016, in the case of *Rev. Tom Brown v. Arkansas Department of Finance & Administration*, Case No. 5:15-CV-05213 (Doc. 71) ("the DFA case"). The Arkansas Department of Finance and Administration ("DFA") had at the time adopted a ban on solicitation activities, which had the effect of precluding Plaintiff from soliciting signatures for the Medical Marijuana ballot initiative outside the Revenue Office in Fayetteville. This Court eventually found that the DFA's limitation on solicitation speech did not violate Plaintiff's rights. In its order, the Court noted that the "ban does not prevent Rev. Brown from canvassing in other public forums, such as on city sidewalks, in plazas, or in parks. Similarly, Rev. Brown is still free to express to others his ideas about marijuana use, his religious faith, and the benefits of signing the ballot initiative he supports." *Id.* at 23. It is this quoted passage from the order in the DFA case that Plaintiff cites to in his instant Complaint, in making the argument that his arrest allegedly violated an order of this Court.

Further, Plaintiff maintains that Officer Stout, a Defendant in the case at bar, filed an affidavit in the DFA case that contained falsified and perjured statements and documents.

## II. LEGAL STANDARD

Under the IFP statute, 28 U.S.C. § 1915, the Court is obligated to screen a case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III. DISCUSSION

### A. Section 1983 Claims

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To establish a claim under § 1983, Plaintiff must show that the Defendants: (1) acted under color of state law; and (2) caused the deprivation of a right established by the Constitution of laws of the United States. *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997).

## 1. Free Exercise of Religion

"The Free Exercise Clause of the First Amendment, which has been made applicable to the States by incorporation into the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof.*'" *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 876-77 (1990) (internal citation omitted) (quoting U.S. Const. Amend. 1 (emphasis added)).[4] The Supreme Court continued:

> The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires. Thus, the First Amendment obviously excludes all governmental regulation of religious *beliefs* as such. The government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma.

*Id.* at 877 (internal quotation marks and citations omitted).

The Free Exercise Clause, by its terms, is not applicable to the actions of private individuals. While Plaintiff makes conclusory allegations that a conspiracy existed between city officials and local businessmen "who sought to deprive poor people of the right to beg for help," he has alleged no facts to support the existence of such a conspiracy. (Doc. 1, p. 13); *see Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) ("A conspiracy claim . . . requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators"); *Dossett v. First State Bank*, 399 F.3d 940, 951 (8th Cir. 2005) ("Under § 1983, a plaintiff must establish not only that a private actor caused a deprivation of constitutional rights, but that the private actor willfully participated

---

[4] *Smith*'s rejection of the compelling interest test was viewed as superseded by the RFRA. However, as noted below, that Act has been held unconstitutional as applied to the states.

with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy.").  Moreover, Plaintiff does not allege that he was actually begging on the date in question, and, further, he does not allege the existence of any anti-begging law, rule, or ordinance.

In this case, Plaintiff was advocating for the passage of the Medical Marijuana Act.[5] While the Act's passage would, in his view, pave the way for his church to lawfully use marijuana in its ceremonies, his advocacy did not itself involve his exercise of a religious belief.  Furthermore, the officers who arrested him appeared at the Flash Market in response to a claim that Plaintiff was trespassing, as he had remained on the Flash Market property after having been asked to leave and was bothering the customers.  No action the officers took on October 16, 2016 inhibited Plaintiff from practicing or exercising his religious beliefs.  Therefore, no free exercise claim is stated, and this claim is dismissed.

### 2.  Unlawful Arrest Claim

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.  "[T]he Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'"  *Davis v. Mississippi*, 394 U.S. 721, 726-27 (1968).  "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."  *Terry v. Ohio*, 392 U.S. 1, 16 (1968).  However, the nature of the encounter dictates the applicable Fourth Amendment analysis.

---

[5]  Specifically, Plaintiff alleges his "demonstration consisted of holding a sign advocating for passage of the Arkansas State Medical Marijuana Act."  (Doc. 1, p. 6).

The Supreme Court has "ma[de] it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Even when an officer has "no basis for suspecting a particular individual, [he] may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search . . . as long as the [officer] do[es] not convey a message that compliance with their requests is required." *Id.* at 434-35 (citations omitted). These encounters are regarded as consensual in nature and no reasonable suspicion is required. *Id.* at 434 (citation omitted). A consensual encounter does "not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Id.* (citation omitted). However, the Supreme Court has ruled that "an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." *Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 178 (2004).

Next, is a category of encounters commonly referred to as "investigative stops." The Supreme Court has held that "the police could stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30). "The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." *Id.* (quoting *I.N.S. v. Delgado*, 466 U.S. 210, 217 (1984)).

Finally, the most severe level of detention is an arrest. The Fourth Amendment requires an arrest to be supported by probable cause. "Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent

person in believing the individual arrested had committed . . . an offense." *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir. 2005) (internal quotation marks and citations omitted).

According to the allegations of the Complaint, Lyons called the police and reported that a man holding a sign was panhandling at the business and refusing to leave. (Doc. 1-1, p. 4). Plaintiff alleges Lyons lied and reported Plaintiff had been begging on the Flash Market property with his sign. Officers Kuchenbecker and Schleiff responded. Plaintiff maintains they demanded he cease his activities and requested his identification. Plaintiff stated he had no identification and refused to provide the officers with his date of birth. Plaintiff was arrested on a charge of obstruction of governmental operations.

Under Arkansas law, "[a] person commits the offense of obstruction of governmental operations if the person: (1) Knowingly obstructs, impairs, or hinders the performance of any governmental function." Ark. Code Ann. § 5-54-102(a)(1). The section does not apply to a "refusal to submit to arrest; [or] [a]ny means of avoiding compliance with the law not involving affirmative interference with a governmental function unless specifically set forth in this section." Ark. Code Ann. § 5-54-102(c)(2)-(3). The term governmental function is defined as "any activity that a public servant is legally authorized to undertake on behalf of any governmental unit he or she serves." Ark. Code Ann. § 5-54-101(6). This provision has been interpreted as not allowing "a police officer to arrest a person for refusing to identify himself when he is not suspected of other criminal activity and his identification is not needed to protect officer safety or to resolve whatever reasonable suspicions prompted the officers to initiate" the investigative stop. *Stufflebeam v. Harris*, 521 F.3d 884, 887 (8th Cir. 2008); *see also Meadows v. State*, 269 Ark. 380, 383 (1980) (interpreting Rule 2.2 of the Arkansas Rules of Criminal Procedure (authority of a law

enforcement officer to request cooperation) as requiring that the "officer's request for information . . . be in aid of the investigation or prevention of a crime").

In this case, the officers were investigating the claim that Plaintiff was guilty of criminal trespass on the Flash Market property. Under Arkansas law, "[a] person commits criminal trespass if he . . . purposefully enters or remains unlawfully in or upon . . . [t]he premises owned or leased by another person." Ark. Code Ann. § 5-39-203(a)(2); *see Yocum v. State*, 325 Ark. 180, 189 (1996) (reasonable cause exists to arrest when a person remains unlawfully on the premises of another). Based on Plaintiff's allegations, assumed as true, the officers' request for information was clearly in aid of their investigation into whether Plaintiff had committed the crime of criminal trespass. *See Meadows*, 269 Ark. at 383 ("the officer's request for information must be in aid of the investigation or prevention of crime"); *Jackson v. State*, 359 Ark. 297, 319 (2004) (officers were investigating drug offenses and did not need to be investigating the Plaintiff for a specific crime in order to stop him and ask for identification—stop did not constitute an unreasonable seizure). The officers' stop and request for identification therefore did not constitute an unreasonable seizure. *See, e.g.*, *Carrick v. Freeman*, No. 4:15-cv-00596, 2016 WL 10611376 (E.D. Ark. Dec. 20, 2016) (officer had probable cause to arrest the plaintiff for obstruction of governmental operations when he was investigating a violation of traffic laws and plaintiff refused to provide identification); *cf. Walker v. City of Pine Bluff*, 414 F.3d 989, 993 (8th Cir. 2005) (police officers lacked probable cause to arrest on-looker for obstruction of governmental operations when he stood a considerable distance from police officers, spoke only when spoken to, and complied with the officers' request for identification after pointing out he had done nothing wrong).

Based on the allegations of the Complaint, there is no plausible claim for unlawful arrest.

### 3.  Destruction of Property

The Court does not believe Plaintiff intended to plead a Due Process claim based on the loss of his picketing sign.  But to the extent he meant to bring such a claim, it is without merit.  The Due Process Clause of the Fourteenth Amendment provides in part that: "No state shall . . . deprive any person of life, liberty or property, without due process of law."  U.S. Const. amend. XIV.  However, "the Supreme Court in recent years has severely restricted procedural due process claims brought under section 1983." *Rheuport v. Ferguson*, 819 F.2d 1459, 1465 (8th Cir. 1987).   "Under *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), and *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), the federal courts will not entertain claims for intentional deprivation of property without predeprivation procedures, when the state provides the plaintiff an adequate postdeprivation remedy." *Id.*  The reason is that "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson*, 468 U.S. at 533.  In light of this, the Supreme Court has concluded there is "no logical distinction between negligent and intentional deprivations of property insofar as the 'practicability' of affording predeprivation process is concerned." *Id.*  This is because "[t]he state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct." *Id.*

It therefore follows that "[i]f negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, . . . intentional deprivations do not violate that Clause provided, of course, that adequate state post-deprivation remedies are available." *Id.* In the case at bar, even if the officers who arrested Plaintiff intentionally destroyed his picketing sign, Plaintiff cannot make out a Due Process claim for the loss of the sign because Arkansas law provides adequate post-deprivation remedies through an action for conversion. *See, e.g.*, *Elliot v. Hurst*, 307 Ark. 134, 138-39 (1991) (cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right). This claim is dismissed.

### 4. Unlawful Entry onto Property Claim

Plaintiff alleges that, twice, two unidentified city police officers came to his house without a warrant or probable cause to discuss the amount of compensation Plaintiff wanted for his sign. Further, Plaintiff alleges that on July 6, 2018, city employee Rutherford entered his property and left an application for attendance at the Farmers Market. (Doc. 1, p. 14). The materials left by Rutherford allegedly included a memorandum written by City Attorney Williams concerning Farmers Market "venders [sic] vis a vie political speech advocates." (Doc. 1-1, p. 58).

As discussed above, the Fourth Amendment protects against unlawful searches and seizures. With respect to the entry on private property for the purpose of knocking on the front door, the law recognizes that "the knock on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home." *Breard v. Alexandria*, 341 U.S. 622, 626 (1951). "This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent

invitation to linger longer) leave . . . .'" *Florida v. Jardines*, 569 U.S. 1, 8 (2013) (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)). "And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak." *Kentucky*, 563 U.S. at 469-70. No Fourth Amendment violation exists for the entry on his property by the police officers who wanted to speak with Plaintiff or for the entry by Rutherford who merely left papers at Plaintiff's door when he was not home. This claim will be dismissed.

### 5. Denial of Medical Care

The Eighth Amendment prohibits the state's deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). To make out a constitutional claim, "[t]he [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but *deliberately* disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (emphasis added).

To show Plaintiff suffered from an objectively serious medical need, he must establish that he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). Plaintiff alleges in this Complaint that at the time of his arrest and incarceration in October of 2016, he was suffering from prostate cancer symptoms, had difficulty urinating, and was being treated by physicians at the Veterans Administration for these problems. The Court will, therefore, assume that Plaintiff has alleged an objectively serious medical need.

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). Here, Plaintiff alleges that the John and Jane Doe jail staff did not provide him with his medication, ignored the fact that he noticed blood on the catheter, refused him medical care, and then, when he became unable to catheterize himself, released him from jail population in order to avoid providing him with medical care. Plaintiff has alleged a plausible cause of action against the John and Jane Doe jail staff. As the Plaintiff does not know the names of these staff members yet, the Court will afford him a period of time to discover their identities and amend his Complaint accordingly. In the meantime, the Court will direct that the Complaint be served on Washington County, the staff members' employer.

With respect to Sheriff Helder, there are no allegations in the Complaint that the Sheriff was personally involved in the decision of whether Plaintiff needed medical care or in the decision to release the Plaintiff to seek medical care on his own. "To establish personal liability of [a] supervisory defendant[], the plaintiff must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (internal punctuation marks and citation omitted). Here, Plaintiff has made no such allegations. No individual capacity claim is stated against Sheriff Helder.

Plaintiff has also asserted an official capacity claim against Sheriff Helder.  "A suit against a county official in his official capacity is the equivalent of a suit against the county itself."  *Doe v. Washington Cnty.*, 150 F.3d 920, 923 (8th Cir. 1998).  To establish an official capacity claim, Plaintiff must allege the existence of a Washington County custom or policy that was the moving force behind, or caused, the alleged constitutional violation. *Rogers v. City of Little Rock*, 152 F.3d 790, 799-800 (8th Cir. 1998).  Plaintiff has not done so.  No official capacity claim is stated.

### 6.  Unconstitutional Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)).  "The Constitution does not mandate comfortable prisons,  . . . but neither does it permit inhumane ones."  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted).

Because Plaintiff was a pretrial detainee at the time, his claims fall under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013).  "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities."  *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir.

1996).   Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities.  *See Howard v. Adkison*, 887 F.2d 134, 137-39 (8th Cir. 1989).  Prison conditions claims include threats to an inmate's health and safety.  *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted).

To state an Eighth Amendment claim, the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm.  *Farmer*, 511 U.S. at 834.  "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 957 (8th Cir. 1994) (quoting *Wilson v. Sieter*, 501 U.S. 294, 304 (1991)).

Plaintiff alleges he was confined in a cell maintained at only 50°F for approximately thirty-six hours, and that he only was clothed with pants, socks, and a thin t-shirt.  (Doc. 1, p. 7).  He alleges that he was placed in this cell because of his refusal to verbally answer the questions of the intake officer.

Plaintiff indicates that at the time of his confinement in the jail, he was 69 years old, weighed only 145 pounds, and was suffering from prostate cancer symptoms.  *Id.* He maintains that his requests for a blanket or for his flannel shirt were refused by jail staff.  *Id.* at 8.  He states he was forced to keep warm by sitting with his t-shirt extended over the rim of the sink bowl so that "slightly warm wet stinking air could rise under the tee shirt [to] help him stay warm."  *Id.*  He also alleges that the toilet bowel had not been cleaned and smelled of urine and feces.  *Id.*  By the time he was removed from the cold

cell, Plaintiff contends he was almost comatose.  *Id.*  These allegations, collectively, are sufficient to state a plausible constitutional claim.

Plaintiff has named only the John and Jane Doe jail staff members and Sheriff Helder as Defendants on this claim.  With respect to Sheriff Helder, there are no allegations he was personally involved in the decision of where to house the Plaintiff or that he was aware of the conditions under which Plaintiff was being held.  For these reasons, the Complaint fails to state an individual capacity claim against Sheriff Helder.

With respect to Plaintiff's official capacity claim against Sheriff Helder, Plaintiff has not alleged the existence of a Washington County custom or policy that was the moving force behind, or that caused, the alleged violation of his constitutional rights.  *Rogers,* 152 F.3d at 799-800.  Accordingly, no official capacity claim is stated with respect to Plaintiff's conditions of confinement.

Finally, the other conditions Plaintiff complains of in the jail, including being deprived of his glasses, which, in turn, prevented him from reading his identification number, which he needed to file a grievance through the jail's kiosk system, are all insufficient to state a constitutional claim.  The deprivation of his glasses or the inability to file a grievance is not tantamount to the deprivation of a "single, identifiable human need such as food, warmth, or exercise.'" *Wilson*, 501 U.S. at 304.

### B.  RFRA Claims

In *City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997), the RFRA was found unconstitutional as applied to the states.  The RFRA remains enforceable against the federal government and as a defense to the application of federal law.  42 U.S.C. § 2000bb-3(a); *see also In re Young*, 141 F.3d 854, 861-63 (8th Cir. 1998).  This case does

not involve federal agencies, federal officers, or the application of federal law. Accordingly, the RFRA has no application to this case.

## C. ARFRA—Ark. Code Ann. 16-123-402 *et seq.*

Arkansas adopted the ARFRA to apply "in all cases in which free exercise of religion is substantially burdened . . . ." Ark. Code Ann. 16-123-402(1). The Act is to be interpreted consistent with the RFRA, "federal case law, and federal jurisprudence . . . ." *Id.* at (2).

The Act provides that:

> [a] government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except that a government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is: (1) In furtherance of a compelling governmental interest; and (2) The least restrictive means of furthering that compelling governmental interest.

Ark. Code Ann. § 16-123-404(a)(1)-(2).

A cause of action under the ARFRA is conferred on "[a] person whose religious exercise has been burdened in violation of this section." *Id.* at (b)(1). As discussed previously, in connection with Plaintiff's First Amendment claim, the Complaint contains no facts that implicate a burden on Plaintiff's exercise of religion. Therefore, no claim is stated under the ARFRA.

## D. Claims under 18 U.S.C. §§ 1961-1968

These statutes comprise the Racketeer Influenced and Corrupt Organizations Act ("RICO"). "The major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers." *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 990 (8th Cir. 1989). RICO provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

Here, Plaintiff has made only the most general allegations of a conspiracy to deny him his First Amendment rights.  RICO does contain a conspiracy subsection.  18 U.S.C. § 1962(d).  To state a claim under this subsection, a plaintiff must plead facts showing the existence of an enterprise engaged in a pattern of racketeering activity; that the enterprise affected interstate or foreign commerce; that defendants were associated with or employed by the enterprise; and that defendants "objectively manifested an agreement to participate . . . in the affairs of [the] enterprise."  *United States v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1996) (citations omitted).

In *Beck v. Prupis*, the Supreme Court, resolving a circuit split, held that a RICO-conspiracy plaintiff must allege that he was injured by an overt act taken in furtherance of the conspiracy, and that was independently wrongful under a substantive provision of the statute, § 1962(a), (b), or (c).  529 U.S. 494, 506 (2000).  Here, Plaintiff has not identified the substantive provision of § 1962 he is proceeding under, nor has he identified the alleged enterprise, the pattern of racketeering activity, the predicate acts, or the injury caused by the violation of the substantive provisions of § 1962.  No plausible RICO claim is stated.

### E.  Claims Against Judge Storey

Judge Storey is immune from suit.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages.").  Here, the actions taken by Judge Storey that Plaintiff challenges are  judicial in nature, *i.e.,* the setting of Plaintiff's bond and Judge Storey's refusal to reduce or eliminate the need for bond.  Judicial immunity applies "even when the judge is accused of acting maliciously and corruptly . . . ."  *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *see*

*also Shanks v. Otsego Cnty. N.Y.*, 2017 WL 4220463, at *5-6 (N.D.N.Y. July 24, 2017) (judge immune from claims that he was guilty of abuse of power, malicious prosecution, false imprisonment, and racial discrimination, so long as he was acting within the jurisdiction of the court).

Judicial immunity is overcome in two situations: (1) if the challenged act is non-judicial; and, (2) if the action, although judicial in nature, was "taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12. Plaintiff specifically maintains that Judge Storey violated his rights because he did not release Plaintiff on his own recognizance at his bail hearing. Judge Storey's absolute immunity from suit cannot be overcome by accusations of bias, malice, corruption, or other serious misconduct. *See Mireles*, 502 U.S. at 11. An action taken by a judge in his judicial capacity "does not become less judicial by virtue of an allegation of malice or corruption of motive." *Forrester v. White*, 484 U.S. 219, 227 (1988). "Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequence to himself." *Mireles*, 502 U.S. at 10 (internal quotation marks and citations omitted). For all these reasons, all claims against Judge Storey will be dismissed.

## F. Perjury Claims Against Officer Stout

Plaintiff maintains that Officer Stout committed perjury through his conduct in the earlier DFA lawsuit brought by Plaintiff. Victims of crime lack any legal right to compel criminal prosecution or to institute criminal prosecution. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Frison v. Zebro*, 339 F.3d 994, 998-1000 (8th Cir. 2003) (rejecting

a § 1983 claim based on the violation of a criminal statute); *In re Kaminski*, 960 F.2d 1062, 1064 (D.C. Cir. 1992) (private party lacks judicially cognizable interest in prosecution of another person). Therefore, to the extent Plaintiff intended to bring a criminal action against Officer Stout, it is not cognizable.

### G. Unlawful Prosecution Claims Against the City Attorney and His Assistant

As City Attorney, Kit Williams is immune from suit. "Prosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (citing *Imbler v. Pachtman*, 424 U.S. 409, 420-27, 431 (1976)). "[A]llegations of improper motive in the performance of prosecutorial functions will not defeat its protection." *Id.* at 916. Plaintiff contends Williams took too long to review the obstruction of justice charge and determine that he would not prosecute Plaintiff on that charge. Any such claim against Williams is barred by the City Attorney's immunity.

The claim of misconduct against Williams' assistant appears to be based on Plaintiff's belief that she did not convey his message to Williams quickly enough, or else failed to emphasize to Williams the time-sensitive nature of Plaintiff's message. Plaintiff does not allege that the assistant had the power to drop the charge against him. These facts do not state a plausible constitutional claim against either the City Attorney or his assistant.

### H. Failure to Settle Claims against Mayor Jordan, City Attorney Williams, and Sheriff Tim Helder

Plaintiff alleges these individuals refused to consider all his damages that resulted from the allegedly unlawful arrest, the jail conditions he was subjected to, the destruction

of his sign, and his inability to advocate for the Medical Marijuana Act for several weeks. He maintains Jordan, Williams, and Helder did not all attend meetings scheduled for the purpose of settling his claims. As there is no statute or constitutional provision that the Court is aware of, or that Plaintiff references, that requires individuals to meet with an alleged victim to settle a claim, there is no plausible cause of action stated here.

## IV. CONCLUSION

**IT IS ORDERED** that the following claims are subject to dismissal because they are frivolous, fail to state claims upon which relief may be granted, or are asserted against individuals immune from suit, 28 U.S.C. § 1915(e)(2)(B)(i)-(iii):

- the § 1983 claims for violation of the First Amendment's Free Exercise Clause; the Fourth Amendment unlawful arrest and illegal entry onto property claims; and the Fourteenth Amendment Due Process Clause for destruction of property.

- the RFRA claims;

- the ARFRA claims;

- the RICO claims;

- the claims against Judge Storey;

- the perjury claims against Officer Craig Stout;

- the unlawful prosecution claims against City Attorney Kit Williams and Jane Doe Assistant; and

- the failure to settle claim.

These claims are **DISMISSED WITHOUT PREJUDICE.** This ruling dismisses all claims against Mayor Lioneld Jordan; City Attorney Kit Williams; Jane Doe, Assistant City Attorney; City of Fayetteville Police Officers Craig Stout, B. Kuchenbecker, and B.

Schleiff; Chuck Rutherford; Judge William Storey; Sheriff Tim Helder; Michael Lyons; and the Flash Market Owners.

This leaves for further resolution the § 1983 claims for denial of medical care and the unconstitutional conditions of confinement claims asserted against the John and Jane Doe staff at the WCDC. As the Plaintiff does not know the names of these staff members yet, the Court will afford him a period of time to discover their identities and amend his Complaint accordingly. **In the meantime, the Court will direct that the Complaint be served on Washington County, Arkansas, the staff members' employer.**

Plaintiff is advised that the Court cannot serve individuals identified only as John and/or Jane Doe. **Plaintiff is given until April 15, 2019, to file an Amended Complaint naming the staff members he contends denied him medical care and/or subjected him to unconstitutional conditions of confinement.**

**IT IS SO ORDERED** on this 14th day of February, 2019.

                                                          TIMOTHY L. BROOKS
                                                          UNITED STATES DISTRICT JUDGE