IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**REV. TOM BROWN**                                                                                      **PLAINTIFF**

**V.**                                        **CASE NO. 5:18-cv-05199**

**SHERIFF TIM HELDER, Washington County,
Arkansas; OFFICER SMITH #564; OFFICER
PARADES #553; OFFICER HOLIDAY # 472;
OFFICER WELCHEL CW02; NURSE REGINA
WALKER; DR. ROBERT KARAS; PA VERONICA
DOCKERY; NURSE ANDREW PIAZZA; NURSE
PHEBE GROTHAUS; ADMINISTRATOR JANE
BURLESON, KARAS URGENT CARE; and
BRIAN THOMAS, City of Fayetteville, Prosecutor's Office**           **DEFENDANTS**

## OPINION AND ORDER

Plaintiff Reverend Tom Brown filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Plaintiff was directed to file an amended complaint on July 26, 2019. *See* Doc. 52. His "First Corrected Amended Complaint" (Doc. 59) was filed on August 19, 2019.

Under the IFP statute, 28 U.S.C. § 1915, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B).

### I. BACKGROUND

Plaintiff was arrested on October 17, 2016, and booked into the Washington County Detention Center ("WCDC"). He remained incarcerated there until October

1

19, 2016, when he was released. At the time of incarceration, Plaintiff was sixty-nine years old.

He asserts three claims stemming from this incarceration: (1) he was subjected to unconstitutional conditions of confinement; and (2) he was denied adequate care for his serious medical needs.[1]

While at the WCDC, Plaintiff contends he:

> was held in torture for some 30 hours, admitted to jail population without access to needed medications, denied writing instruments and paper to make any record of events and personalities involved in the events, [and] denied access to any communication thru the jails computer Kiosk telephone system

(Doc. 59 at 3).

Plaintiff states he was unable to submit a grievance because an inmate using the kiosk system must start by entering the identification number contained on his arm band. As his glasses were taken away from him, Plaintiff maintains he could not read his arm band. In any event, when both inmates and jailers assisted him by entering his identification number, the number did not work. The jailer reported this; however, Plaintiff claims he was not able to access the kiosk at all during his incarceration at the WCDC.

On October 17, 2016, Officer T. Smith was the intake officer and the one who took Plaintiff's personal clothing away. Plaintiff alleges Officer Smith "threaten[ed] to keep him in the intake cell for 72 hours if Plaintiff refused to answer his questions."

---

[1] Plaintiff initially asserted a number of other claims against various Defendants. Those claims were dismissed by Opinion and Order (Doc. 17) entered on February 14, 2019. Only the two claims asserted in the current complaint survived dismissal. Plaintiff previously attempted to reassert the dismissed claims and was denied permission to do so. (Doc. 52).

Plaintiff believes Officer Smith deliberately put him in the cold cell "for the purpose of torturing Plaintiff in compliance with Smith's orders."

Plaintiff maintains that Officer Smith failed to list on the property intake sheet all of the identification cards carried by Plaintiff, including a VA hospital identification card. According to Plaintiff, Officer Smith's actions show he was "a willing and able member of a conspiracy to deny rights to those arrested and placed in his custody and care." Plaintiff also states Officer Smith failed to contact the "VA hospital to determine Plaintiff's medical needs" and failed to contact jail medical staff.

Plaintiff was placed in an intake cell and remained there until sometime in the afternoon of October 18, 2016, when he was moved to general population. Plaintiff alleges he was placed in the intake cell because he "refused to verbally answer questions from the intake officer." Plaintiff asserts that the temperature in the intake cell was maintained at less than 50 degrees. Plaintiff's contends that his requests for his personal clothing in order to stay warm were refused as were his request for blankets.

Plaintiff indicates he had been treated for elevated PSA[2] levels in urine, difficulty and pain on urination, urine retention, and other symptoms of prostate cancer. Plaintiff told Officer Smith that he had been searched by the arresting officer who had Plaintiff's "medical identification." Further, Plaintiff states he advised the intake officer that "the [Veteran's Administration ("VA")] would supply his needed medications upon demand by the jail staff." Despite this, Plaintiff alleges he went without his necessary medications until October 19, 2016.

---

[2] Prostate-Specific Antigen.

Plaintiff alleges that Defendants failed to respond to a report that he was bleeding from the penis at 9:45 p.m. on October 19, 2019, "thru obstruction and bleeding again at 9:45 am" on October 20th. Plaintiff also alleges that when he was being released, the initial plan was to release him to the street with "no transportation, no means of communication, all the while bleeding from the penis with no medical care whatsoever."

With respect to Officers Parades, Plaintiff alleges his claims against him are the same as those he brought against Officer Smith. Plaintiff notes one exception as to Officer Parades: Plaintiff maintains that Officer Parades falsified the intake sheet by crossing out Officer Smith's name and putting his own name as the "searching officer."

With respect to Officer Holiday, Plaintiff notes she is listed as the officer on duty when Plaintiff was released. Plaintiff therefore contends she is the officer who initially refused to call an ambulance even though "the blood dripping from the Plaintiff's penis was obvious on the jail uniform." Officer Holiday knew Plaintiff had no transportation.

Plaintiff alleges Officer Welchel is the intake officer who processed him on October 18, 2016. Plaintiff states he was nearly comatose from being in the cold cell and he could not even open his eyes. Despite this, Officer Welchel, without getting Plaintiff medical attention, simply finished his intake paperwork and assigned him to general population.

With respect to Sheriff Helder, Plaintiff maintains that "he is personally responsible for the medical care of inmates, that as Sheriff he established the standards and procedures under which jail employee's function, and that all actions taken by jail staff are taken at his direction, authorization and intention." Plaintiff, therefore, believes "all injuries suffered by Plaintiff, caused by jail staff, are correctly

attributed [to] Helder in [his]Official Capacity as they answer to him for the performance of their jail duties." Further, Plaintiff has submitted a newspaper article to establish that Sheriff Helder "has repeatedly had problems providing adequate health care for jail inmates over many years." Although Plaintiff had no interactions with Sheriff Helder, he believes Sheriff Helder is liable personally because the injuries Plaintiff suffered were the result of the sheriff's policies and procedures.

With respect to Nurse Walker, Dr. Karas, PA Dockery, Nurse Piazza, Nurse Grothaus, and Karas Urgent Care, Plaintiff alleges they refused him medical care. Plaintiff maintains Administrator Jane Burelson had the authority to manage the Plaintiff's health care needs and did not.

Finally, with respect to Prosecutor Thomas, Plaintiff claims he is the one who ordered Plaintiff's release. Plaintiff asserts that the denial of adequate medical care began with his arrest, and Prosecutor Thomas was responsible for "everything that happened after the initial arrest as he is the person who charges the Plaintiff with violation of the law and imposition of confinement prior to trial." Plaintiff maintains that Prosecutor Thomas was responsible for the "four days of illegal confinement which caused injuries."

## II. LEGAL STANDARD

Under the IFP statute, 28 U.S.C. § 1915, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III. DISCUSSION

### A. Section 1983 Claims

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To establish a claim under § 1983, Plaintiff must show defendants: (1) acted under color of law; and (2) caused the deprivation of a right established by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 534-35 (8th Cir. 2014).

### B. Claims Against Prosecuting Attorney Thomas

Plaintiff's claims against Prosecuting Attorney Thomas are subject to dismissal. A prosecutor is absolutely immune from suit for any conduct undertaken in his or her role as advocate for the state. *Imbler v. Pachtman*, 424 U.S. 409 (1976). Absolute prosecutorial immunity protects the prosecutor as a key participant in the criminal justice process, such that the prosecutor need not be inhibited from performing his or

her functions by a constant fear of retaliation. *Id.* at 428. This is true no matter the underlying motive of the prosecutor or the propriety of the actions taken. *Myers v. Morris*, 810 F.2d. 1437, 1446 (8th Cir. 1987) (finding that allegations that a prosecutor proceeded with a prosecution based on an improper motive did not defeat absolute prosecutorial immunity); *see also Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("Actions connected with initiation of prosecution, even if those actions are patently improper are immunized.") (internal quotation omitted).

### C. Remaining Claims

The Court believes Plaintiff has asserted plausible claims against the remaining Defendants. The Complaint will be served on those Defendants.

### IV. CONCLUSION

The claims against Prosecuting Attorney Thomas are hereby **DISMISSED WITH PREJUDICE**, because they are asserted against an individual immune from suit, 28 U.S.C. § 1915(e)(2)(B)(iii).

The Complaint will be served on the remaining Defendants by separate order.

**IT IS SO ORDERED** on this 29th day of August, 2019.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE